IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUGENE FORTE )<br>  )<br>    Plaintiff, )<br>  )<br>  v. )<br>  )<br>TOMMY JONES, an individual, and )<br>DOES 1-100, et al., )<br>  )<br>    Defendants. )<br>_____ ) | 1:11-cv-0718 AWI BAM<br><br>MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>Doc. # 31 |

   This is an action for damages by Plaintiff Eugene Forte ("Plaintiff") against defendant Tommy Jones ("Defendant"), presumably in his individual capacity.  Currently before the court is Defendant's motion for summary judgment on Plaintiff's Second Amended Complaint ("SAC"), which alleges one claim pursuant to 42 U.S.C. § 1983, and state claims for defamation and intentional infliction of emotional distress.[1]  The SAC was originally filed in the Stanislaus County Superior Court and was removed by Defendant on May 5, 2011.  Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331.  Venue is proper in this court.

---

[1] Plaintiff currently has two cases pending before this court; this case and case # 11-cv-0318.  Issues that have recently been raised concerning the stayed status of case # 11-cv-0318 are not the subject of this opinion and will be addressed separately.

**FACTUAL BACKGROUND AND UNDISPUTED MATERIAL FACTS**

This action arises out of two separate events; the first occurring on May 5, 2007, and the second occurring on March 19, 2008. The first event occurred at a May Day parade in Los Banos that was attended by both Plaintiff and Defendant. At the time, Defendant was Mayor of the City of Los Banos. Plaintiff was in attendance with a friend of his, Clinton Galloway ("Galloway"). Plaintiff is a journalist whose on-line publication, "Badger Flats Gazette," contains primarily articles written by Plaintiff and aimed primarily at exposing malfeasance by public officers. Plaintiff approached Defendant who was in conversation with another person at the time and requested an interview. After excusing himself from the conversation with the other person, Defendant and Plaintiff walked away "a few feet." Doc.# 32 at 3:2. Defendant alleges that he and Plaintiff were standing "a few feet out of hearing distance from" a group of people that included Los Banos City Council Members Mike Villalta, Joe Sousa, Tom Faria, Anna Ballati, and City Manager Steve Rath. Doc. # 32 at 3:2-4. Plaintiff, in his opposition to Defendant's motion agrees that he and Defendant were standing "a few feet out of hearing distance" of the aforementioned Los Banos city officials. Doc. # 36 at 5:9-11. Plaintiff alleges some of the officials were "looking toward" Plaintiff and Defendant as they conversed. Id. at 12-13.

The parties agree that Plaintiff asked Defendant how Defendant "felt his progress as mayor was going for the City of Los Banos." Doc. # 32 at 3:6-7. As some point during the conversation between Plaintiff and Defendant, Defendant alleges that Defendant "*had heard that Plaintiff was a dangerous member of the Ku Klux Klan.*" Doc. # 32 at 3:8-9 (italics added). Plaintiff disputes this statement in that he alleges Defendant said that he "knew for a fact" that Plaintiff was a dangerous member of the Ku Klux Klan. There is no dispute that Plaintiff is not a member of the Ku Klux Klan nor has he any sympathies whatsoever for what are commonly assumed to be Klan views. It appears that Defendant alleges that he had heard the rumor of Plaintiff's Klan ties from Plaintiff's nephews while Plaintiff alleges that no such statements were ever made by them to Defendant. For purposes of this opinion, the court will assume that Defendant's Klan statement was factually unfounded.

Upon hearing Defendant voice his contention that Plaintiff was a dangerous member of the Ku Klux Klan, Plaintiff called Galloway to the conversation and asked Defendant to repeat the statement to Galloway. Upon doing so, Galloway, an African-American, said that he had known Plaintiff for over thirty years and that Galloway "was absolutely positive Plaintiff was not a member of the Ku Klux Klan." Doc. # 32 at 3:16-17. Plaintiff then alleges the following:

> Due to the vehemence with which [Defendant] had accused [Plaintiff] of being a dangerous member of the KKK, [Plaintiff] realized and believed that [Defendant] had been telling people in the community the same thing. In an attempt to immediately mitigate any damage to his reputation, [Plaintiff] later that day introduced Galloway to Supervisor O'Banion and Fire Chief Chet Guintini as his friend and discussed what Jones had said.

Doc. # 36 at 6:4-9. Defendant does not dispute the foregoing and alleges, without dispute, that both O'Banion and Guintini responded to Plaintiff's allegation that Defendant had accused Plaintiff of Klan membership with words to the effect of "are you kidding me?" Doc. # 32 at 3:21-27.

Defendant alleges that he "did nto tell anyone other than [Plaintiff] and Galloway that Defendant heard [Plaintiff] was a member of the Ku Klux Klan." Defendant's UMF # 17. Plaintiff disputes this by alleging that Defendant "also told Corey Pride and others, and implied such in the televised City Counsel meeting on March 19, 2008." Doc. # 37 at ¶ 17. It is not disputed that Plaintiff filed a claim for defamation on or about June 7, 2007, based on the allegedly defamatory statement by Defendant on May 5, 2005. Plaintiff's opposition to Defendant's Motion does not mention Corey Pride and there is no indication of what may have been said between Defendant and Pride or when such conversation is to have taken place. Plaintiff alleges that sometime after his claim for defamation was filed with the City of Los Banos, an article concerning the claim and the nature of the relationship between Plaintiff and Defendant was reported in the local newspaper. A copy of the article referenced by Plaintiff is appended at pages 78 and 79 of Doc. # 37. The court has examined the newspaper report and concludes it reports the fact of Plaintiff's claim against City of Los Banos and reports an abbreviated version of the substance of that claim that includes the

3

allegation that Defendant told people that [Plaintiff] is "'a dangerous member of the Ku Klux Klan.'" Id.

The televised City Council meeting of March 19, 2008, mentioned in the paragraph above was the other event that forms the factual backdrop to Plaintiff's claims, and in particular to his second claim for relief. Apparently for some time prior to the meeting Plaintiff had been investigating loans by a real estate developer named Greg Hostetler to Defendant and had published one or more articles regarding the same in the Badger Flats Gazette. In "count two" of Plaintiff's defamation claim for relief, Plaintiff alleges that he an a group of other citizens concerned about the loan issue were in attendance at the City Counsel meeting and some, including Plaintiff confronted Defendant on that issue during the portion of the meeting that is reserved for public comments. At paragraph 34 of the complaint, Plaintiff alleges:

> Later, during that same [March 19 City Council] meeting, Defendant Jones addressed the audience and stated, "There were time if you try to do certain things you have been lynched with a rope. This time I got lynched with words." Plaintiff submits that [Defendant's] use of the word "lynched" is a continuation of his defamatory accusation that Plaintiff Forte is a dangerous member of the Ku Klux Klan.

Doc# 1 at ¶ 34.

In Plaintiff's second claim for relief for infliction of emotional distress, further elaborates on the City Council meeting of March 19 by alleging that Plaintiff and a group of 20 other citizens signed a "Notice of Intent to Recall Mayor Jones" based on the alleged relationship between Defendant and Hostetler. It was apparently Plaintiff's intent to announce the Notice of Intent at the meeting during the period of time normally allotted for public comment at such meetings. Plaintiff alleges that the normal time allotted for the comments of any one individual is five minutes. Plaintiff alleges that he was shut off after about two minutes and fifteen seconds and then was forcibly ejected from the meeting room and building to the cheers and jeers of Defendants "supporters." Plaintiff alleges he suffered emotional distress as a result.

Defendant alleges, and Plaintiff does not dispute that Plaintiff did not file a separate

4

claim regarding the events that transpired at the City Council meeting on March 19, 2008. Plaintiff contends instead that he was "not required to file a claim for every additional allegation of fact or circumstance that occurs that are related to the initial claim." Doc. # 37 at ¶ 25. Defendants also assert, and Plaintiff does not dispute, that Plaintiff did not allege his claim for violation of civil rights in violation of 42 U.S.C. § 1983 until the filing of Plaintiff's second amended complaint on or about May 5, 2011. Plaintiff contends his civil rights claims "relate back" to his previously filed claims.

## LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Although the party moving for summary judgment always has the initial responsibility of informing the court, the nature of the responsibility varies "depending on whether the legal issues are ones on which the movant or the non-movant would bear the burden of proof at trial." Cecala v. Newman, 532 F.Supp.2d 1118, 1132-1133 (D. Ariz. 2007).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its

5

pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th Cir. 1979). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45

1  (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

**DISCUSSION**

**I. First Claim for Relief – Defamation**

Plaintiff's first claim for relief alleges two "counts" or instances of defamation; the first occurring at the May Day parade on May 5, 2007, and the second occurring at the Los Banos City Council meeting on March 19, 2008. For purposes of this analysis the following definition of "defamation" seems most suited:

> Defamation constitutes an injury to reputation; the injury may occur by means of libel or slander. A false and unprivileged *oral* communication attributing to a person specific misdeeds or certain unfavorable characteristics or qualities, or uttering certain other derogatory statements regarding a person, constitutes slander. ¶ One of the elements of the tort of defamation is "publication." In general, each time the defamatory statement is communicated to a third person, the statement is said to have been "published," although a written dissemination, as suggested by the common meaning of that term, is not required. Each publication ordinarily give rise to a new cause of action for defamation. [Citation.] Publication of defamatory matter is its communication intentionally or by a negligent act to one other than the person defamed. [Citation.]

Haley v. Casa Del Rey Homeowner's Ass'n, 153 Cal.App.4th 863, 877-878 (4th Dist. 2007) (internal quotations and citations omitted; italics in original).

Defendant cites Royer v. Steinberg, 90 Cal.App.3d 490 (1st Dist 1979) for the proposition that consent or participation of the slandered individual is a form of "absolute privilege" that is a complete defense to the tort of defamation. Royer explains the issue thus:

> One of the oldest and most widely recognized defenses to the publication of defamatory matter is the doctrine of consent, which has been classified as a form of *absolute privilege*. [. . . .] As explained in the early Supreme Court case of Pouchan v. Godeau, (1914) 167 Cal. 692, 694 [. . .]: "Where a defendant, not in the presence or hearing of third persons, makes a slanderous statement about a plaintiff, and thereafter at the request of the plaintiff rep;eats the statement in the presence and hearing of third persons, such repetition cannot be make the basis of an action for slander."

Royer, 90 Cal.App.3d at 498 (internal citations omitted, italics in original).

Two propositions flow logically from the foregoing. First, it is the person who is accused of uttering the defamatory statement, not the person defamed, who must publish the statement. Second, the defamatory statement must be published by the person allegedly committing the defamation *before* the person who is defamed publishes the statement himself

7

1   thereby conferring on anyone and everyone else the absolute privilege of consent.  In this
2   context, it is important to understand that "consent" does not mean willful allowance as is
3   normally the case.  Rather, the term "consent" as used in Royer is more akin to a form of
4   waiver of any further action once the person defamed has repeated the defamatory statement
5   himself.  To put this in the context of Plaintiff's first "count" of his first claim for relief,
6   Plaintiff can only move forward with his claim if he can show by means of admissible
7   evidence that Defendant published – that is, told – at least one other person that Plaintiff was
8   a member of the Ku Klux Klan *before* plaintiff asked Defendant to repeat the statement to
9   Galloway and before Plaintiff himself repeated the statement to O'Banion and Guintini and
10  very definitely before Plaintiff published the statement by filing the complaint with the City
11  of Los Banos.
12          At the outset it is important to make clear that there is only one defamatory statement
13  at issue in this case; Defendant's statement that he was told (or that he knew for a fact) that
14  Plaintiff was "a dangerous member of the Ku Klux Klan."  There is no dispute that this
15  statement is both false and derogatory within the meaning of the elements set forth in Haley.
16  However, it is important to stress that it is the allegation of membership in the Ku Klux Klan
17  that is actionable; the allegation that a person is a "racist," on the other hand is not actionable
18  because the term "racist" has no factually-verifiable meaning.  See Overhill Farms, Inc. V.
19  Lopez, 190 Cal.App.4th 1248, 1262 (4 Dist. 2010) ("charging a person with being racist,
20  unfair or unjust – without more – [. . .] constitute mere name calling and do not contain a
21  provably false assertion of fact" as is required to state a claim for defamation).
22          Plaintiff's opposition to Defendant's motion for summary judgment points to an e-
23  mail exchange between Cory Pride, a non-party in this action, and an unidentified person
24  wherein the term "racist" is used in the same sequence of e-mail exchanges in which
25  Plaintiff's name is mentioned.  This is not evidence of publication of a defamatory statement
26  because, even seen in the worst possible light, it is merely an indication that someone (not
27  necessarily Defendant) is of the impression that Plaintiff is a racist.  Again, pursuant to
28  Overhill Farms, where someone thinks another person is a racist and says so to a third person

does not constitute publication of a defamatory statement because the statement is one of factual opinion that cannot be proven or disproven. Whatever the email exchange involving Corey Pride shows, it does not show that anyone told her, or that she was of the opinion herself, that Plaintiff was a "dangerous member of the Ku Klux Klan."

In a similar vein, to the extent Plaintiff is of the opinion that the article by Minerva Perez in the Los Banos Enterprise is evidence of *Defendant's* publication, that opinion is contradicted by the article itself with reports only that *Plaintiff* filed a claim alleging that Defendant had been "telling other people" that Plaintiff is a dangerous member of the Ku Klux Clan. Thus, the article is only evidence of Plaintiff's publication of Defendant's statement, not of Defendant's publication.

Plaintiff has failed to show that Defendant's comment that he knew Plaintiff to be a "dangerous member of the Ku Klux Klan" was ever published to any third person by Defendant. In fact, so far as the evidence before the court is concerned, there is no evidence that the allegation was ever published to a third person by *anyone except* Plaintiff when he filed his complaint. While Plaintiff may feel subjectively belittled by commentary about racism that may have surrounded Plaintiff's complaint regarding Defendant's alleged comment, the fact is that the commentary was solely the product of Plaintiff's own instigation so far as the facts before the court show. Because there is no evidence showing Defendant's publication of the defamatory statement prior to, or even following, Plaintiff's own publication of the alleged statement, Plaintiff's first count for defamation fails.

Plaintiff's second count for defamation arising from the city council meeting on March 19, 2008, fails for much the same reason as the first count. This is independent of any consideration of whether Plaintiff can maintain the claim if he did not file a tort claim with the City of Los Banos regarding that incident. First, neither the complaint nor Plaintiff's Opposition establish any factual connection between Defendant's "lynching" statement and Defendant's alleged defamatory statement ten months earlier. Plaintiff admits that Defendant made the "lynching" statement "later, during that same meeting" *after* Plaintiff confronted Defendant concerning his conflict of interest and he requested that Defendant tender his

resignation as mayor. See Doc. # 36 at 7:15-18. In the context of Defendant's lynching statement, the only logical contextual connection regarding lynching is to the efforts of Plaintiff and others who came to the meeting prepared to confront Defendant and ask for his resignation. As the evidence before the court stands, the only way anyone at the meeting could have made a connection between the "lynching" statement and the alleged "Ku Klux Klan" statement ten months earlier is through Plaintiff's own public disclosure of the Ku Klux Klan statement. As noted, there is absolutely no evidence before the court that anyone else published that statement besides Plaintiff.

Second, the "lynching" statement, standing alone, cannot be actionable because it is nothing more than a personal reflection of opinion. At worst, the implication is to the effect that Plaintiff and the others confronting Defendant are racists. As explained above, that sort of name-calling is not actionable, no matter how subjectively hurtful it may be, because the statement is not of the sort that can be verified as false. Again, mere name-calling does not constitute the tort of defamation.

The court concludes Plaintiff has failed to provide any admissible evidence at all that would entitle him to relief on the legal theory of defamation. Defendant is therefore entitled to judgment as a matter of law as to Plaintiff's first claim for relief.

**II. Intentional Infliction of Emotional Distress**

Plaintiff's second claim for relief alleges intentional infliction of emotional distress based on the events occurring at the March 19, 2008, city council meeting. Defendant seeks judgment on Plaintiff's second claim for relief on the ground Plaintiff failed to comply with the requirements of the California's Government Claims Act. California Government Code Section 945.4 provides that "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented ... until a written claim therefor has been presented to the public entity...." Under Government Code § 950.2 a claim for money damages "against a public employee or former public employee for injury resulting from an act or omission in the scope of his employment as a public employee is barred if an action against the employing public entity for such injury is barred. . . ." The

result, as both parties appear to recognize, is that Plaintiff cannot sue Defendant on a claim for intentional infliction of emotional distress unless Plaintiff has first filed a claim against Defendant's employer, City of Los Banos, for that claim.  It is not disputed that Plaintiff did not file a claim for intentional infliction of emotional distress following the March 19, 2008, city council meeting.

Plaintiff, in his opposition to Defendant's motion, contends failure to timely file a claim under the Tort Claim Act is an affirmative defense and is waived in this case because Defendant did not allege failure to file a claim as a defense in Defendant's answer to the complaint.  Plaintiff is incorrect.  The failure to allege compliance with the Tort Claims Act is not an affirmative defense, it is a condition precedent to filing a claim in state or federal court and is an element of the claim itself that must be alleged in the complaint.  State of California v. Superior Court (Bodde), 32 Cal.4th 1234, 1240 (2004).  Because Plaintiff did not file a claim for infliction of emotional distress based on the events of the March 19, 2008, city council meeting, he is barred from bringing that claim in this court.  Defendant is therefore entitled to judgment as to Plaintiff's second claim for relief.

**III.  Plaintiff's Constitutional Claims – 42 U.S.C. § 1983**

There is no dispute that Plaintiff's claim pursuant to 42 U.S.C. § 1983 made its first appearance in Plaintiff's SAC, which was filed in Merced County Superior Court on or about March 24, 2011.  Defendant's grounds for judgment as to Plaintiff's third claim for relief is simply that the claim is time-barred and that the new claims set forth in the SAC does not relate back to Plaintiff's prior common law claims for defamation and intentional infliction of emotional distress.  The parties agree that the event giving rise to Plaintiff's constitutional claims occurred during the Los Banos City Council meeting on May 7, 2008.  Plaintiff's section 1983 claim, as set forth in his SAC, is ambiguous as to the nature of the constitutional injury.  At paragraph 52, the SAC lists a number of "rights" that Plaintiff contends were abridged as a result of the events that transpired at the meeting without any explanation as to how those right were abridged.  In general terms, however, it appears that Plaintiff's third claim for relief alleges the abridgment of free speech rights under the First Amendment.  This

view is supported by the fact that Plaintiff's opposition relies to some extent on Norse v. City of Santa Cruz, 629 F.3d 966 (9th Cir. 2010), a case that dealt with, among other things, the nature of municipal supervisor meetings as limited public fora where certain restrictions on speech violate the First Amendment. The court assumes, for the sake of this analysis that Plaintiff's third claim for relief is based on the allegation that Plaintiff's effort to address the meeting on the subject of Defendant's alleged receipt of improper loans was unconstitutionally cut short when Plaintiff was cut off and hustled from the meeting chamber prior to the expiration of the five-minutes customarily allotted for citizen comments.

Because 42 U.S.C. § 1983 contains no specific statute of limitations, federal courts borrow state statutes of limitations for personal injury actions in section 1983 suits. See Wilson v. Garcia, 471 U.S. 261, 276 (1985); Torres v. City of Santa Ana, 108 F.3d 224, 226 (9th Cir. 1997). The Ninth Circuit has consistently held that the limitations period for an action pursuant to section 1983 is contained in California's general personal injury statute. See McDougal v. County of Imperial, 942 F.3d 668, 672 (9th Cir. 1991). California's general personal injury statute is set forth at California Code of Civil Procedure, section 335.1 and provides a limitations period of 2 years. See Thompson v. City of Shasta Lake, 314 F.Supp.2d 1017, 1023-1024 (E.D. Cal. 2004 (discussing applicability of California's general residual statute of limitations to actions pursuant to section 1983). In this action both parties appear to not dispute that the limitations period for Plaintiff's third claim for relief is two years and both parties appear to recognize that Plaintiff's third claim for relief would be time-barred except and unless an exception to the statute of limitations applies.

Plaintiff contends the amendment adding the claim pursuant to 42 U.S.C. § 1983 relates back to the original complaint. The relation back doctrine of Rule 15(c) is a bar to the statute of limitations. Rural Fire Protection Co. v. Hepp, 366 F.2d 355, 362 (9th Cir.1966). Thus, Plaintiff contends that his additional claim against the already-named Defendant is not time-because it arises out of the same facts or transaction that was timely alleged in the previous complaint. Defendant contends that the doctrine of relation back does not apply in this case because the claim relies on additional facts not set forth in the prior complaint and

because it does not allege the same injury. See Doc. # 32 at 6:1-17 (relying on Norgart v. Upjohn Co., 21 Cal.4th 383, 471 (1999). The court finds Defendant's argument non-persuasive.

When a plaintiff seeks to amend a complaint to state a new claim against an original defendant "the court compares the original complaint with the amended complaint and decides whether the claim to be added will likely be proved by the 'same kind of evidence' offered in support of the original pleading. Rural Fire Protection Co. v. Hepp, 366 F.2d 355, 362 (9th Cir.1966). In making this decision, the court considers whether the 'allegations of a new theory in an amended complaint ... involve[ ] the same transaction, occurrence, or core of operative facts involved in the original claim.' Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc., 690 F.2d 1240, 1259 n. 29 (9th Cir.1982), cert. denied, 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983)." Percy v. San Francisco Gen. Hosp., 841 F.2d 975, 978 (9th Cir. 1988). "Thus, amendment of a complaint is proper if the original pleading put the defendant on notice of the 'particular transaction or set of facts' that the plaintiff believes to have caused the complained of injury. [Santana v. Holiday Inns, Inc., 686 F.2d 736, 739 (9 Cir. 1966)]. Fairness to the defendant demands that the defendant be able to anticipate claims that might follow from the facts alleged by the plaintiff." Id. at 979.

To the extent Defendant's motion suggests that relation back applies only where the same injury is alleged or that relation back does not apply where additional facts are alleged, Defendant misstates the law. Pursuant to the foregoing legal standard, relation back may apply where a *different* injury is alleged on the *same facts* that were alleged in the prior complaint, whether or not additional facts are alleged. Plaintiff's first amended complaint, which is provided as part of Defendants request for judicial notice, alleges that, at the city council meeting: "After [Plaintiff] spoke for approximately two minutes and fifteen seconds, Defendant [. . .] told [Plaintiff] his time was up, proceeded to ignore [Plaintiff's] explanation that the five minutes were NOT up." Exhibit "B" to Defendant's Request for Judicial Notice at p.8. At Paragraph 45 of Plaintiff's First Amended Complaint, Plaintiff alleges that "Jones had Los Banos Police Chief Gallager forceably push [Plaintiff] out of the City Council

room." Id.

The court finds that the foregoing allegations from Plaintiff's First Amended Complaint are both sufficient to put Defendant on notice that a First Amendment violation might be alleged to have occurred and are sufficient, without more, to make out a claim for violation of Plaintiff's First Amendment rights. The fact that Plaintiff's SAC alleges *additional* facts at paragraphs 53 through 56 has no bearing on the relation back of Plaintiff's claim because those facts are not the ones that *give rise* to the constitutional claim. The facts that give rise to the claim of First Amendment violation were adequately set forth in Plaintiff's prior complaint. The court recognizes there are other factual issues, such as whether Defendant can be said to have had authority or control over Gallager's actions, that may or may not render Plaintiff's constitutional claim susceptible to further challenge. However, for purposes of the application of the statute of limitations to Plaintiff's claim, the court finds that the doctrine of relation back prevents application of the limitations period to bar Plaintiff's claim. Defendant's motion for summary judgment with regard to Plaintiff's third claim for relief will accordingly be denied.

THEREFORE, it is hereby ORDERED that Defendant's motion for summary judgment is hereby GRANTED as to Plaintiff's First and Second Claims for Relief. Defendant's Motion for summary judgment is hereby DENIED as to Plaintiff's Third Claim for Relief.

IT IS SO ORDERED.

Dated:   March 19, 2013                                              
                                                            SENIOR DISTRICT JUDGE