# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **EUGENE E. FORTE,** | **CASE NO. 1:11-CV- 0718  AWI BAM** |
| **Plaintiff** | **PRETRIAL ORDER** |
| v. | **Motions In Limine Hearing and Trial Confirmation:** |
| **TOMMY JONES, an individual and DOES 1 - 100,** | **Tuesday, May 20, 2014 1:30 p.m., Courtroom 2** |
| **Defendants.** | **Trial:  Tuesday, June 3, 2014, 8:30 a.m., Courtroom 2** |
| | **RULES OF CONDUCT** |

The pretrial conference was held on April 16, 2014.   The trial in this matter is set for June 3, 2014.  The parties currently estimate that the trial shall take approximately five days.

## I.  Jurisdiction and Venue

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and has venue is properly with this court.

## II.  Jury Trial

The parties request a jury trial as to all triable issues.

## III.  Facts

### A.  Undisputed Facts

#### *1. Defendant's Disputed and Undisputed Facts*

A.     On May 7, 2008 and for some time prior thereto, Eugene Forte was a journalist who operated an on-line-line publication called the Badger Flats Gazette. The publication contains

primarily articles written by plaintiff and aimed primarily at exposing malfeasance by public officers.

B.     On May 7, 2008, defendant Tommy Jones was the Mayor of the City of Los Banos.

C.     The Los Banos City Council is the governing body for the City of Los Banos and during all time relevant held council meetings during which time is generally allotted for public comments.  During a city council meeting held on May 7, 2008 Eugene Forte got up to speak. He began speaking but was cut off by Tommy Jones before he finished speaking.

### *2.  Plaintiff's Undisputed Facts*

The following undisputed facts are supported by court filed documents, articles in the BFG, written letters with fax conversation and email conversation, etc.

a.     During the times alleged in the complaint, plaintiff was resident of the County of Merced.

b.     During the times alleged in the complaint, defendant was the Mayor of the City of Los Banos.

c.     Plaintiff writes commentary contained in a publication known at the Badger Flats Gazette (hereinafter BFG).

d.     Plaintiff wrote an article in November of 2006 which was published in The Badger Flats Gazette issue entitled, "Five Card Badger."

e.     Plaintiff's commentary in the BFG primarily relates to alleged misconduct by public officials.

f.     On April 28th, 2008 Plaintiff initiated and signed a Certified Notice of Intent to Recall defendant Jones as Mayor of the City of Los Banos.

g.     Plaintiff read the Certified Notice of Intent to Recall at the City Council meeting occurring on May 7, 2008.

h.     Citizens of Los Banos are allowed to speak for five minutes at city council meetings at the open mike podium.

i.     Defendant Jones presided over the City Hall Council meeting of May 7th, 2008 as Mayor of Los Banos and that defendant Jones was within his scope of employment as a public officer at such time and was charged with maintaining order and decorum at the meetings.

j.     Defendant Jones at the meeting of May 7th, 2008 was the sole operator of the manual timer set via his computer that cut short plaintiff's allotted time of five minutes to approximately two minutes and forty-seven seconds.

k.     On May 12th, 2008, City Attorney Vaughn responded to what he said was Forte's email of May 9th, 2008 stating that Forte's microphone had been cut-off at two minutes and forty-seven seconds by Mayor Jones.

l.     On May 7th, 2008, Forte was admitted to the Los Banos Community Hospital Emergency room with elevated blood pressure, chest pains and anxiety that he states was caused by his being threatened with arrest and publicly humiliated at the City council meeting earlier in the evening by Jones who Forte claims intentionally cut the public microphone off prior to Forte's allotted time to speak in order to inhibit, violate and chill Forte's freedom of speech to prevent Forte from reading Jones' answer to the recall petition and incurred $5,606.12 in hospital bills.

m.     On the evening of May 7th, 2008, Forte sent a letter to City Attorney William Vaughn and Los Banos City council members Anna Balati, Joe Sousa, Tom Faria, and Mike Villalta informing them that he believed that Jones orchestrated a plan in advance of the meeting to prevent Forte from speaking his five minutes at the podium.

n.     On May 14th, 2008 Jones issued a letter to Forte alleging that he had "inadvertently" cut Forte's time short during the public forum on May 7th, 2008 due to not resetting the timer Jones controlled.

o.     At the time plaintiff's microphone was cut-off, plaintiff was reading Jones' certified reply to the certified recall petition of Jones and had only been speaking for approximately 3 minutes.

p.     At the time that Forte's microphone was cut short from the allotted five minutes by Jones, he told Jones that his five minutes were not up and asked that the City Attorney, William Vaughn inform Jones the time was cut short.

q.     Vaughn informed Jones the time was cut short and told Jones to allow Forte to speak his full time but Jones would not permit such to be done.

r.     Jones claims that his having Plaintiff removed from the meeting of May 7th, 2008 was in order to maintain decorum at a public meeting whereat Plaintiff was disrupting the process by asking that he be allowed to be given the remainder of his allotted time of five minutes which was cut short by approximately two and a half minutes.

s.     According to a sworn declaration of May 8th, 2007 of Mr. Clinton E. Galloway, an African American, and a deposition of Galloway taken by Jones' attorneys in the subject litigation, Galloway has testified and declared that on May 5th 2007 that Jones told Galloway that he knew for a fact that Forte was a dangerous member of the Ku Klux Klan.

t.     Galloway was the best man for Forte at his wedding to his Chinese American wife Eileen and has been a best friend of Forte since 1971.

u.     Plaintiff has never been a member of the Ku Klux Klan (KKK) or any other racist organization.

v.     On May 7th, 2007, Forte filed a claim against Tommy Jones and the City of Los Banos for Jones stating that he knew for a fact that Forte was a dangerous member of the KKK.

w.     The claim was rejected by the City of Los Banos.

x.     On January 6th, 2010 Jones' attorney, Benjamin Ratliff,  filed a Motion to Declare Forte a California Vexatious Litigant in the subject case and requesting a security deposit.  The document filed by Ratliff was approximately five and one half inches thick with exhibits attached numbered from A- CC.  The vexatious litigant motion was based largely upon Forte's writings in the Badger Flats Gazette, Forte's comments and protected speech at the open mike at the City Hall meetings, Forte filing a complaint with the California Fair Political Practices Commission (FPPC) relating to Jones breaking disclosure laws and conflict of interest laws by not disclosing loans he received from Greg Hostetler, and that Forte had filed frivolous documents and was speaking badly of public officials in both Merced and Monterey County in his Badger Flats Gazette (BFG). The motion was defeated, and Forte sought sanctions against Ratliff for bringing forth a frivolous

motion and for his bad treatment of Forte's 16 year old son during his deposition which was denied.

y.      On January 14th, 2010, Jones was issued a warning letter by the FPPC that he violated conflict of interest laws by voting on the annexation of properties in 2004-2005 owned by Ranchwood Homes developer Greg Hostetler adding to the previous finding by the FPPC that Jones had broken disclosure laws by his actions, as a result of the complaint filed by Forte with the FPPC against Jones on March 13th, 2008.

z.      On January 21st, 2010, licensed California attorney Charles Belkin filed a declaration in support of a continuance of the Motion to Declare Forte a Vexatious litigant stating that he had cursively reviewed the Motion but needed more time to be able to substitute in a Forte's attorney to oppose the vexatious litigant motion.  Belkin stated that he attempted to gain cooperation from Mr. Ratliff to stipulate to a continuance so that he could prepare an opposition but Ratliff refused to do so stating that his client would not agree to such.

aa.      The vexatious litigant Motion was denied in its entirety by Judge William Mayhew on June 6th, 2010.  Forte requested sanctions and payment of the attorney fees he paid to Charles Belkin for opposing the vexatious litigant motion that Forte claims to have been $11,090.00 in his motion for reconsideration of sanctions filed on June 18th, 2010.  The sanctions were denied by Judge William Mayhew on July 20th, 2010 and Forte claims that such amount of legal fees is a recoverable cost of legal fees in the subject litigation against Jones.

bb.      On November 22nd, 2006, Forte authored the BFG issue titled "Five Card Badger" with a commentary directed to Mayor–elect Tommy Jones.   The issue contained the wedding picture of Forte's wedding party that showed Mr. Clinton E. Galloway as Forte's best man.

cc.      On November 30th, 2006, Forte authored a letter from the Badger Flats Gazette which was faxed to Los Banos City Attorney William Vaughn requesting that Vaughn remind Jones to provide a response to the open letter presented Jones and Vaughn in the Badger Flats Gazette on November 27th, 2006 after the swearing in ceremony for Jones at the Los Banos City Hall.

dd.     On December 5th, 2006 Forte authored a letter to Jones and Vaughn requesting that Jones respond to Jones' allegations that Los Banos Police Department officers had planted drugs in his car when he was arrested in September 1999 when he was a Los Banos City councilman. The letter was published in the BFG issue "A Day at the Races."

ee.     Jones has stated during the deposition in this case that he has never read one of the Badger Flats Gazettes, and that he has never spoken to anyone about any of the articles in the Badger Flats Gazette, or been given a copy of the Badger Flats Gazette by anyone.

ff.     On May 7th, 2007 Forte wrote an article in the BFG ("Jail Time & Dominoes") about Jones being arrested for crack cocaine PC 11377 (A), being under the influence of PC 11550 (A) and PC 23152 (A) DUI alcohol/drugs on September 3rd, 1999 by the Los Banos City Police Department when Jones was a city councilman in and a teacher at the Los Banos High School.

gg.     Jones was arrested on September 3rd, 1999 for being in the possession of a controlled substance (crack cocaine) PC 11377 (A), being under the influence of PC 11550 (A) and PC 23152 (A) DUI alcohol/drugs on September 3rd, 1999 by the Los Banos City Police Department when Jones was a city councilman in and a teacher at the Los Banos High School.

hh.     Forte authored an article in the BFG issue "V is for Recall" which included the police reports of Jones' September 3rd, 1999 arrest and his mug shot.

ii.     On March 13th, 2008, Forte filed a complaint with the FPPC and supplied them with documentation indicating that Jones had not disclosed on his filed FPPC 700 Statements of Economic Interests signed on November 19th, 2004, the February 28th, 2006 loans of $10,000.00 Jones had received from Ranchwood Homes developer Greg Hostetler.

jj.     On November 19th, 2004 and February 28th, 2006 Jones had filed the FPPC 700 Forms signed under penalty of perjury by Jones stating that he had used all reasonable diligence in preparing this statement.  Jones stated that he had reviewed the statements and to the best of Jones' knowledge, the information contained therein and in any attached schedules was true and complete.

kk.     The information supplied by Jones on the FPPC 700 Forms was not true and complete and Jones committed perjury by not disclosing the loans of Hostetler on his FPPC 700 Forms.

ll.     On June 4th, 2008 the FPPC issued a formal warning letter to Jones finding that he had violated non-disclosure laws by not disclosing on his FPPC 700 Forms under penalty of perjury the $10,000.00 loan from Hostetler based upon the complaint filed by Forte on March 13th, 2008.

**B.  Disputed Facts**

*1.  Defendants Disputed Facts*

A.     Whether Tommy Jones violated plaintiff's constitutional right to freedom of speech when he during the May 7, 2008 city council meeting.

B.     Whether plaintiff suffered damage as a result of the actions of Tommy Jones.

C.     All other factual matters as alleged by plaintiff relating to liability and damages are disputed by the defendants.

*2.  Plaintiff's Disputed Facts*

a)     That Mayor Jones accidentally failed to reset the timer after the person who spoke prior to Plaintiff.  Plaintiff claims it was no accident by Jones.  It was a malicious and intentional act by defendant to humiliate and chill plaintiff's speech, prevent plaintiff from reading defendant's response to the Notice of Intent to Recall at the city council meeting, and in retaliation for plaintiff's exposure of defendant's misconduct to the public.

b)     Plaintiff also asserts that Mayor Jones did not accidentally fail to reset the timer after the prior speaker on May 7th, 2008 but intentionally did so due to his hatred of Forte for filing the recall against Jones, and filing a complaint with the FPPC that found he had violated disclosure laws.

c)     Plaintiff claims that Jones was in control of the meeting of May 7th, 2008 and that Gallagher was acting under the directions of Jones to remove Forte from the May 7th, 2008 meeting.

d)     That Jones intentionally cut the time short of plaintiff, and Plaintiff was not afforded the full five minutes to speak as was the standard policy of the Los Banos City Council.

**C.  Disputed Evidentiary Issues**

*1.  Defendant's Disputed Evidentiary Issues*

A.     Whether evidence regarding Tommy Jones arrest for cocaine possession in 1999 is relevant or admissible.

B.     Whether evidence from the California Fair Political Practices Commission regarding the relationship or alleged loans to Tommy Jones in 2002-2003 from. Greg Hostetler, Catherine Hostetler or Ranchwood Homes is relevant or admissible. Whether evidence regarding Tommy Jones statement in May 2007 during a May Day Parade that he was told plaintiff was a dangerous member of the Ku Klux Klan is relevant or admissible.

C.     Whether evidence regarding Tommy Jones statement in May 2007 during a May Day Parade that he was told plaintiff was a dangerous member of the Ku Klux Klan is relevant or admissible.

D.     Whether evidence pertaining to allegations that Defendant or his counsel conspired with a local high school student to have Plaintiff killed is relevant or admissible.

### 2. *Plaintiff's Disputed Evidentiary Issues*

A.     Plaintiff believes due to defendant's previous pre-trial statement that defendant is going to attempt to have admitted irrelevant and prejudicial evidence such as his being declared a vexatious litigant on February 20th, 2013 by the Fifth Appellate Court's own original proceeding, and Forte being declared mentally incompetent to stand trial in the criminal case of CRL001412 which is now under appeal.  Both incidents took place six years after the meeting of May 7th, 2008 and have no relevance to the subject proceeding except to unduly prejudice plaintiff.

B.     Plaintiff submits that any evidence that goes to showing defendant's wilful and intentional act of violating plaintiff's first amendment right to speak at the City Council meeting or showing malicious motive are relevant to the sole remaining cause of action.

Whether defendants' intention to use the TRO issued against Forte in May of 2010 is relevant and admissible.  If so, Plaintiff submits that the entire background and factual history that resulted in that TRO will have to be introduced and will be more prejudicial than  informative., i.e., the actions arising out of Forte's lawsuit for defamation by Jones which resulted in the death threats Forte alleges was issued by Jones through a student and close family friend of his, the judgment against the student and payment to Forte, the purpose of the TRO which was to keep

Forte out of the City Council meeting to prevent him from speaking about the death threats and in which the student who issued the death threats in fact attended and spoke at the public forum.

### D.  Special Factual Information

Pursuant to Local Rule 16-281(b)(6), the following special factual information pertains to this action:

Defendant has set out his contentions on the facts of this case in his motion for Summary Judgment.  There is no unique or special factual information in addition to what is contained in those documents by Defendant.

Plaintiff submits the following special factual information:

a.     Numerous articles written by plaintiff about Jones in the BFG prior to the meeting of May 7th, 2008 will be used to establish Jones' motives for intentionally cutting off the microphone of Forte to discredit Forte before the public and chill his freedom of speech.

b.     Jones was found to have broken conflict of interest laws and disclosures laws based upon complaints filed with the FPPC by Forte for actions by Jones prior to the May 7th, 2008 meeting.

c.     Forte has never been a member of the KKK.

d.     Jones had been arrested for possession of crack cocaine when Jones was a City Councilman and Forte, as a reporter, had been asking for information and interview regarding such to write a story for the Badger Flats Gazette.

## IV.  Relief Sought

Plaintiff is seeking substantial, actual and punitive damages, attorney fees, cost of suit and any other relief to which he may be entitled and awarded by a jury.

Defendants seek a defense verdict, costs and attorney's fees for defense of this action.

## V.  Points of Law

A.  Defendant's Contentions

### First Amendment Claim

A claim under § 1983  requires proof  by a preponderance of the evidence that  a defendant acted under color of law and proof that defendants' acts  deprived the plaintiff of  a

particular right under the United States Constitution. *Beck v. Ohio,* (1964)379 U.S. 89, 90-91, 85 S.Ct. 223, 225-226, 13 L.Ed.2d 142.

Under the First Amendment to the United States Constitution, a citizen has the right to be free from governmental action taken to retaliate against the citizen's exercise of First Amendment rights or to deter the citizen from exercising those rights in the future. *Sloman v. Tadlock,* 21 F.3d 1462, 1469–70 (9th Cir.1994). "Although officials may constitutionally impose time, place, and manner restrictions on political expression carried out on sidewalks and median strips, they may not 'discriminate in the regulation of expression on the basis of content of that expression.' . . .' State action designed to retaliate against and chill political expression strikes at the very heart of the First Amendment.' " *Id.* (citations omitted).

Thus, in order to demonstrate a First Amendment violation, a citizen plaintiff must prove by a preponderance of evidence that "by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct." *Id.* (quoting *Mendocino Env'l Ctr. v. Mendocino County,* 14 F.3d 457, 459–60 (9th Cir.1994). A plaintiff need not prove, however, that "his speech was actually inhibited or suppressed." *Mendocino Env'l Center v. Mendocino County,* 192 F.3d 1283, 1288 (9th Cir.1999). *See also Awabdy v. City of Adelanto,* 368 F.3d 1062, 1071 (9th Cir.2004).

B.  Plaintiff's' Contentions

There is a clearly established law entitling citizens to speak at city council meeting public forums, and that a reasonable officer would not have believed it was lawful conduct to prevent a citizen from speaking at such public forum.

In civil rights cases, courts have created the rule of qualified immunity to insure "public officials' elective performance of their duties" by making it possible for them to reasonably anticipate when their conduct may give rise to liability for damages. Anderson v. Creighton (1987) 483 U.S. 635. Whether a government official "is entitled to qualified immunity turns on a two part inquiry: '(1) Was the law governing the official's conduct clearly established? (2) Under that law, could a reasonable officer have believed the conduct was lawful?'" Harlow v. Fitzgerald (1982) 457 U.S. 800, 812; MacKinney v. Nielsen (9th Cir. 1995) 69 F.3d 1002, 1005 (quoting Act Up!

1    Portland v. Bagley (9th Cir. 1993) 988 F.2d 868, 871); Brady v. Gebbie (9th Cir. 1988) 859 F.2d

2    1543, 1555.Jones is not entitled to qualified immunity.

3          The contours of the right alleged to have been violated "must be sufficiently clear that a

4    reasonable official would understand that what he is doing violates that right." Anderson, supra at

5    640; Brady, supra at 1556. "This does not mean that any official action is protected by qualified

6    immunity 'unless the very action in question has previously been held unlawful,' but it does

7    require that 'in the light of pre-existing law the unlawfulness must be apparent.'" Mendoza v.

8    Block (9th Cir. 1994) 27 F.3d 1357 (quoting Anderson, supra at 640). Courts have also noted the

9    danger in defining rights too narrowly, as doing so would be to allow defendants "to define away

10   all potential claims." Kelley v. Borg (9th Cir. 1995) 60 F.3d 664, 667. "An officer is not entitled to

11   qualified immunity on the grounds that the law is not clearly established every time a novel

12   method is used to inflict injury." Mendoza, supra at 1360.

13         **Punitive Damages**

14         In *Smith v. Wade*, the Supreme Court held that Section 1983 authorizes the award of

15   punitive damages against state or local officials in their individual capacity./24/ The Court

16   suggested that punitive damages may be awarded when an official's conduct is malicious,

17   intentional, or recklessly or callously indifferent to protected rights./25/ This test focuses on the

18   state of mind of the defendant./26/ While outrageous or egregious conduct may provide evidence

19   of the requisite state of mind, the conduct need not be egregious or outrageous to justify an award

20   of punitive damages./27/ The determination of whether to award punitive damages once a showing

21   of malicious or recklessly indifferent conduct is made rests within the discretion of the jury or

22   judge (in a jury-waived case)./28/ When jury instructions properly require the plaintiff to prove

23   reckless or callously indifferent conduct, they need not require a finding of "outrageous" or

24   "extraordinary" conduct at the same time./29 /

25         Courts repeatedly have upheld punitive damage awards against public officials for

26   discriminatory employment practices,/30/ police brutality,/31/ and unlawful searches and

27   seizures./32/ Courts have also upheld awards for prisoner mistreatment,/33/ including deliberate

28   indifference to medical needs,/34/ violations of the right to procedural due process,/35/ and

violations of First Amendment rights./36/ Punitive damages may be awarded even when the plaintiff suffers only nominal damages from a deprivation of federal rights./37/ However, if a punitive damage award is "grossly excessive" in relationship to the state's legitimate interest in punishing and deterring unlawful conduct, it runs afoul of substantive due process and may be reduced or reversed on appeal./38/

**Affirmative Defenses**

Defense of Latches, Failure to Mitigate Damages, and Unclean Hands

Plaintiff submits that these affirmative defenses were not previously made in the Answer to the SAC, that they do not apply, and plaintiff objects to the amendment of these defenses into the Answer, but if the court allows such amendment, Plaintiff reserves the right to conduct discovery on such matters.  Affirmative defenses not previously made in the Answer to the SAC do not apply.

**VI.  Abandoned Issues**

The motion for summary judgment was granted as to plaintiff's first cause of action for defamation, the second count for defamation and the second cause of action for Intentional Infliction of Emotional Distress.

**VII.  Witnesses**

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses.  NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(10).

**A.  Plaintiffs' Witnesses**

1) Tommy Jones

2) Eugene Forte

3) William Vaughn

4) Eileen Forte

5) Mike Villalta

6)     Joe Sousa

7)     Tom Faria

8)     Clinton Galloway

9)     Ann Ballati

10)     Steve Hammond

11)     Corey Pride

12)     Los Banos Police Chief Gary Brizzee

13)     ex-LBPD Chief Chris Gallagher

**B.  Defendants' Witnesses**

A.     Tommy Jones;

B.     Eugene Forte;

**VIII.  Exhibits**

The following is a list of documents or other exhibits that the parties expect to offer at trial.  NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(11).

**A.  Plaintiffs' Exhibits**

a)     Deposition transcript of Eugene Forte

b)     Deposition transcript and video tape deposition of Tommy Jones.

c)     Deposition transcript of Joe Sousa

d)     Video recordings of Los Banos City Hall meetings prior to and including the May 7th, 2008 at which Forte spoke at the public microphone.

e)     Copies of relevant portions of the Badger Flats Gazette up until May 7th, 2008 and relevant articles in the BFG in June 2008.

f)     Copies of letter sent to Los Banos City Attorney William Vaughn and City Council members for delivery to Jones.

g)     Deposition of Jordan Forte.

13

**B.  Defendants' Exhibits**

      A.   DVD's of Plaintiff speaking at City Council Meetings during 2008.

      B.   Restraining Order issued by Merced Superior Court on May 10, 2010.

**IX.  Discovery Documents To Be Used At Trial (Answers To Interrogatories And Responses To Requests For Admissions**

Plaintiff 's only discovery documents are those listed under Plaintiff's Exhibits, above.

Defendant lists no discovery documents.

**X.  Further Discovery or Motions**

Discovery is closed and the time for filing discovery motions has expired.

**XI.  Stipulations**

None.

**XII.  Amendments/Dismissals**

No amendments or Dismissals other than those set out in this court's Summary Judgment Order of March 20, 2013.

Plaintiff wishes to reserve his right to amend the SAC for clarification purposes if needed.

**XIII.  Settlement Negotiations**

None.

**XIV.  Agreed Statement**

The parties shall submit to Courtroom Deputy, Harold Nazaroff, an agreed statement of the case or separate statements of the case on or before Thursday, May 29, 2014.

**XV.  Separate Trial Of Issues**

Should the jury find for Plaintiff on the issue of punitive liability, trial to determine the amount of punitive damages will be bifurcated.

**XVI.  Impartial Experts - Limitation Of Experts**

None.

**XVII.  Attorneys' Fees**

Defendant is seeking costs and attorney's fees pursuant to 42 U.S.C. §1988 should they prevail in this action.

Plaintiff has been represented by counsel in this subject litigation and is entitled to attorney fees.  Plaintiff submits that Defendant has no right to seek attorney fees in defending this action, but only costs.

**XVIII.  Further Trial Preparation**

### A.  Final Witness List

The parties are ordered to file and serve their final list of witnesses by Thursday, May 29, 2014.  Additionally, at that time Plaintiffs shall disclose the order of witnesses so that Defendants will be prepared for cross-examination.

Except upon the showing set forth above in section VII, a party may not add witnesses to the final list of witnesses, or to any other updated witness list, who are not disclosed in this Order in Section VII.

### B.  Trial Briefs

The parties are directed to file and serve a Trial Brief by May 12, 2014.  Local Rule 16-285.  The parties need not include in the Trial Brief any issue that is adequately addressed in a motion in limine, or in an opposition brief to a motion in limine.  Any response to a Trial Brief shall be filed and served by May 15, 2015.

### C.  Duty of Counsel to Pre-Mark Exhibits

The parties are ordered to confer no later than April 23, 2014, for purposes of pre-marking and examining each other's exhibits.  All joint exhibits must be pre-marked with numbers preceded by the designation JT/-- (e.g., JT/1, JT/2).  All of Plaintiffs' exhibits shall be pre-marked with numbers.  All of Defendants' exhibits shall be pre-marked with letters.

1.  Counsel shall create four (4) complete, legible sets of exhibits in binders as follows:

(a) Two sets of binders to be delivered to Courtroom Clerk Harold Nazaroff Thursday, May 29, 2014, one for use by the Courtroom Clerk and the other for the court; and

(b)  One set for each counsel's own use.

If the parties desire, they may have a fifth set of binders to be used for the purposes of questioning witnesses.

2.  Counsel are to confer and make the following determination with respect to each proposed exhibit to be introduced into evidence, and to prepare separate indexes - one listing joint exhibits, and one listing each party's separate exhibits:

(a)  Duplicate exhibits, i.e., documents which both sides desire to introduce into evidence, shall be marked as a joint exhibit, and numbered as directed above.  Joint exhibits shall be listed on a separate index, and shall be admitted into evidence on the motion of any party, without further foundation.

(b)  As to exhibits that are not jointly offered, and to which there is no objection to introduction, those exhibits will likewise be appropriately marked, e.g., Plaintiffs' Exhibit 1 or Defendants' Exhibit A, and shall be listed in the offering party's index in a column entitled "Admitted In Evidence."  Such exhibits will be admitted upon introduction and motion of the party, without further foundation.

(c)  Those exhibits to which the only objection is a lack of foundation shall be marked appropriately, e.g., Plaintiffs' Exhibit 2 - For Identification, or Defendants' Exhibit B - For Identification, and indexed in a column entitled "Objection Foundation."

(d)  Remaining exhibits as to which there are objections to admissibility not solely based on a lack of foundation shall likewise be marked appropriately, e.g., Plaintiffs' Exhibit 3 - For Identification or Defendants' Exhibit C - For Identification, and indexed in a third column entitled "Other Objection" on the offering party's index.

3.  Each separate index shall consist of the exhibit number or letter, a brief description of the exhibit, and the three columns outlined above, as demonstrated in the example below:

INDEX OF EXHIBITS

| EXHIBIT # | DESCRIPTION | ADMITTED IN EVIDENCE | OBJECTION FOUNDATION | OTHER OBJECTION |
|-----------|-------------|----------------------|----------------------|-----------------|

Two sets of the completed joint index and the separate indexes shall be delivered to the

1  Courtroom Clerk with the two sets of binders.

2  The court has no objection to counsel using copies.  However, the copies must be legible.

3  If any document is offered into evidence that is partially illegible, the court may sua sponte

4  exclude it from evidence.

5  **D.  Discovery Documents**

6  By Thursday, May 29, 2014, each party shall file a list of all discovery documents the

7  party intends to use at trial.  The list shall indicate whether each discovery document has

8  previously been lodged with the Clerk.  If the discovery document has not been previously lodged,

9  the party shall so lodge the document with the Courtroom Clerk by Thursday, May 29, 2014.

10  **E.  Motions In Limine Hearing and Briefing Schedule**

11  The hearing for motions in limine will be held on May 20, 2014, at 1:30 p.m. in Courtroom

12  2.  In addition to addressing any filed motions in limine, at that time the court will also settle, to

13  the extent possible, any other matter pertaining to the conduct of the trial.

14  Counsel are expected to be fully cognizant of the legal issues involved in the case by the

15  date of the hearing for motions in limine.

16  By 4:00 p.m. on April 30, 2014, all motions in limine, with supporting points and

17  authorities, shall be filed and served either personally or by facsimile upon opposing counsel.

18  By 4:00 p.m. on May 12, 2014, opposition to any motion in limine shall be filed and

19  served either personally or by facsimile upon opposing counsel.  If a party does not oppose a

20  motion in limine, that party shall file and serve in the same manner a Statement of Non-Opposition

21  to that motion in limine.

22  By 4:00 p.m. on May 15, any reply to an opposition shall be filed and served either

23  personally or by facsimile upon opposing counsel.  Because the court will need time to prepare for

24  the hearing on May 20, 2014, the court is not inclined to consider late reply briefs.

25  **F.  Morning Conferences During Trial**

26  During the trial, it is the obligation of counsel to meet with the court each morning to

27  advise the court and opposing counsel as to what documents are proposed to be put into evidence

28  that have not previously been admitted by stipulation, court order, or otherwise ruled upon.  The

17

court will rule on those documents, to the extent possible, prior to the commencement of trial each day out of the presence of the jury. If the ruling depends upon the receipt of testimony, the court will rule as requested upon the receipt of such testimony.

The court shall consider any other legal matter at morning conferences as well. The court does not wish to recess the trial to hear legal argument outside of the presence of the jury, and proper preparation by counsel will eliminate the need for that result.

### G.  Use Of Videotape and Computers

Any party wishing to use a videotape for any purpose during trial shall lodge a copy of the videotape with the Courtroom Clerk by 4:00 p.m. on Thursday, May 29, 2014. If a written transcript of audible words on the tape is available, the court requests that the transcript be lodged with the court, solely for the aid of the court.

If counsel intends to use a laptop computer for presentation of evidence, they shall contact the courtroom deputy clerk at least one week prior to trial. The courtroom deputy clerk will then arrange a time for counsel to bring the laptop to the courtroom, and meet with a representative of the Information and Technology Department and receive a brief training session on how counsel's equipment interacts with the court's audio/visual equipment. If counsel intends to use PowerPoint, the resolution should be set no higher than 1024 x 768 when preparing the presentation.

### H.  Order of Witnesses

In order to make the trial operate efficiently and smoothly, each counsel has the continuing obligation to advise opposing counsel as to what witnesses he or she intends to call twenty-four (24) hours prior to calling that witness.

### I.  Proposed Jury Instructions

The parties shall file and serve proposed jury instructions and verdict forms by 4:00 p.m. on May 15, 2014, along with a copy of the instructions on a CD-ROM disc, preferably formatted for Microsoft Word 2010. Alternatively, electronic filers shall attach a copy of their proposed jury instructions to an e-mail, which the party shall send to: awiorders@caed.uscourts.gov. Prior to submission of the proposed jury instructions and verdict forms, the parties shall meet and confer in

1  order to determine which instructions they agree should be given and whether they can agree upon

2  a joint verdict form.

3      The parties are to submit a packet of jury instructions to which they agree, and separate

4  packets of jury instructions to which they cannot agree.  All proposed jury instructions shall be

5  submitted in duplicate sets.  One set shall identify the party proposing the instruction or state that

6  the instruction is agreed.  Each instruction shall be numbered or lettered, cite supporting authority,

7  and include the customary "Given, Given as Modified, or Refused," showing the court's action

8  with regard to each instruction.  The other set shall be an exact copy of the first set, but shall be a

9  "clean" copy that does not contain the identification of the offering party, numbering/lettering,

10 supporting authority, or references to the court's disposition of the proposed instruction.

11     As to those instructions to which the parties dispute, the court will conduct its jury

12 instruction conference during trial at a convenient time.  However, depending on time constraints,

13 the Court may conduct a preliminary jury instruction conference on May 20, 2014, at 1:30 p.m.

14 following the hearing and decision on the parties' motions in limine.

15 **J.  Voir Dire**

16     The parties shall file and serve proposed voir dire questions, if any, by 4:00 p.m. on

17 Thursday, May 29, 2014.

18     Further, in order to aid the court in the proper voir dire examination of the prospective

19 jurors, counsel should lodge with the court on the first morning of trial a list of all prospective

20 witnesses, including rebuttal witnesses, that counsel reasonably expect to call.  The purpose of the

21 lists is to advise the prospective jurors of possible witnesses to determine if a prospective juror is

22 familiar with any potential witness.

23 **K.  Agreed Summary Of The Case**

24     The parties shall lodge with the Courtroom Clerk a joint agreed summary of the case,

25 briefly outlining the positions of the parties by 4:00 p.m. on Thursday, May 29, 2014.  The

26 summary will be read to the jury panel at the outset of the trial solely for the purposes of assisting

27 in the jury selection process.  The contents of the summary shall not be deemed to be evidence or

28 an admission or stipulation by a party as to any contested fact or issue.

**XIX.  Objections to Pretrial Order**

Any party may, within ten (10) calendar days after the date of service of this order, file and serve written objections to any of the provisions of this order.  Local Rule 16-283.  Such objection shall specify the requested corrections, additions or deletions.

**XX.  Rules of Conduct During Trial**

**A.  General Rules**

1.  All participants in the trial shall conduct themselves in a civil manner.  There shall be no hostile interchanges between any of the participants.

2.  All oral presentations shall be made from the podium, unless otherwise permitted by the court.

3.  Sidebar conferences are discouraged.  Legal arguments or discussion of issues outside the presence of the jury should be done during recesses.

4.  Counsel shall advise their respective clients and witnesses not to discuss any aspect of the case in the common areas of the courthouse accessible to the jurors, such as the lobby, the elevators, the hallways and the cafeteria.

**B.  Jury Selection**

1.  The court will conduct voir dire to be supplemented by any written questions submitted by counsel prior to trial and after the court has concluded its questioning of the jury panel.  In some circumstances, the court may allow brief direct questioning by counsel.

**C.  Opening Statements**

1.  Counsel may use visual aids in presenting the opening statement.  However, any proposed visual aids shall be shown to opposing counsel before opening statement.

**D.  Case in Chief**

1.  Counsel shall have his/her witnesses readily available to testify so that there are no delays in the presentation of evidence to the trier of fact.

2.  At the close of each trial day, counsel shall disclose his/her anticipated witnesses and order of presentation for the next day, so that any scheduling or evidentiary issues may be raised at

that time.

### E.  Witnesses

1.  Before approaching a witness, counsel shall secure leave of court to approach the witness.

2.  Before approaching a witness with a writing, counsel shall first show the writing to opposing counsel.

### F.  Exhibits

1.  All exhibits shall be marked and identified in accordance with the instructions in the Pretrial Order.

2.  An exhibit shall not be published to the jury until it has been admitted into evidence and counsel has secured leave of court to publish the exhibit.

3.  The court usually will conduct an on the record review of the exhibits that have been admitted in evidence at the conclusion of each party's case in chief and after each party has rested its entire case.

### G.  Objections

1.  No speaking objections or arguments are permitted in the presence of the jury.  Counsel shall state the specific legal ground(s) for the objection, and the court will rule based upon the ground(s) stated.  The court will permit counsel to argue the matter at the next recess.

2.  The court will not assume that any objection made also implies with it a motion to strike an answer that has been given.  Therefore, counsel who has made an objection, and who also wishes to have an answer stricken, shall also specifically move to strike the answer.

### H.  Closing Argument

1.  Counsel may use visual aids in presenting the closing argument.  However, any proposed visual aids shall be shown to opposing counsel before closing argument.

FAILURE TO COMPLY WITH ALL PROVISIONS OF THIS ORDER MAY BE GROUNDS FOR THE IMPOSITION OF SANCTIONS, INCLUDING POSSIBLE DISMISSAL OF THIS ACTION OR ENTRY OF DEFAULT, ON ANY AND ALL COUNSEL AS WELL AS ON ANY

PARTY WHO CAUSES NON-COMPLIANCE WITH THIS ORDER.

IT IS SO ORDERED.

Dated:   April 16, 2014

_____

SENIOR  DISTRICT  JUDGE