**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **EUGENE FORTE,** | **CASE NO. 1:11-CV-0718 AWI-BAM** |
| **Plaintiff** | |
| v. | **ORDER ON PLAINTIFF'S MOTION IN LIMINE REQUESTING "CLARICAL CLARIFICATION OF SECOND AMENDED COMPLAINT** |
| **TOMMY JONES,** | |
| **Defendant.** | **Doc. # 152** |

On May 23, 2014, Plaintiff noticed a motion in limine for "Clerical Clarification of Second Amended Complaint" and a request for clarification of various rulings on motions in limine made by the court during the hearing on motions in limine on May 20, 2014 (hereinafter, "Plaintiff's Motion").  Plaintiff's Motion seeks first to clarify Plaintiff's intent and belief concerning the scope of alleged acts by Defendant that form both the basis of Plaintiff's claim for First Amendment violation on a theory of retaliation and the basis of Plaintiff's claim for damages arising from the alleged violation of his First Amendment rights.  The caption of Plaintiff's Motion indicates that Plaintiff is also seeking clarification of the court's rulings on a number of motions in limine that were addressed during the hearing on motions in limine that was held on May 20, 2014.  Although the purpose of Plaintiff's Motion for clarification of the orders made at the hearing on the motions in limine is not clear, the court will address both issues raised in Plaintiff's Motion in order.

**I. Plaintiff's Motion for Clerical Correction of Second Amended Complaint**

Plaintiff's second amended complaint ("SAC") alleged claims under California common law for defamation and intentional infliction of emotional distress ("IIED").  Plaintiff has provided

1    to the court a copy of the SAC with the portions of the SAC that he considers to have been

2    previously adjudicated against him by the court's order on Defendant's motion for summary

3    judgment, Doc. # 43, printed in "~~strike out~~" font.  The only portions of the copy of the SAC that

4    are printed in ~~strike-out~~ font are the titles to Plaintiff's first and second claims for relief.  Thus, it

5    appears to be Plaintiff's intention that the facts that were alleged in connection with his first and

6    second claims for relief are the factual backdrop to support Plaintiff's contention that the acts

7    complained of in the first and second claims for relief are instances of Defendant's retaliation

8    against Plaintiff motivated by Defendants resentment of Plaintiff's exercise of his free speech

9    rights.

10                    *A. Background Facts Regarding Plaintiff's Defamation and IIED Claims*

11            Plaintiff's claim for defamation is comprised of two "counts" that describe separate

12   incidents involving Plaintiff and Defendant.  The first occurred at a May Day celebration in 2007

13   and consisted of an interchange between Plaintiff and Defendant wherein Defendant allegedly told

14   Plaintiff that someone had told Defendant that Plaintiff was "a dangerous member of the Ku Klux

15   Klan."  Doc. # 153-1 at 14: 10-11.  The second "count" of Plaintiff's defamation claim occurred at

16   a Los Banos City Council meeting on March 19, 2008.  At that meeting, Plaintiff, along with some

17   other members of the audience, questioned Defendant concerning an article Plaintiff had published

18   in his newsletter, the "Badger Flats Gazette," that reported alleged instances of conflict of interest

19   and untruthful statements on official form documents by Defendant.  At the end of the public

20   comments, Defendant was called upon to resign his office.  Plaintiff replied "[t]here are times if

21   you try to do certain things you have been lynched with a rope.  This time I got lynched with

22   words."  Doc. # 153-1 at 8:16-17.

23           The court's order on Defendant's motion for summary judgment was filed on March 20,

24   2013, (the "March 3 Order").  The March 3 Order granted Defendant's motion for summary

25   judgment as to "Count 1" of Plaintiff's defamation claim because the undisputed facts presented in

26   the motion for summary judgment showed that there was no publication of the allegedly

27   defamatory statement except to the extent publication was accomplished by Plaintiff's own efforts

28   to counter Defendant's alleged statement.  See Doc. # 43 at 9:13-15 (noting that Plaintiff's first

1   count fails because there is no evidence showing that anyone except Plaintiff published the

2   offending remark).  The court's March 3 Order granted summary judgment as to Plaintiff second

3   "count" of the defamation claim because the court determined that the term "lynched with words,"

4   even if construed to be aimed at Plaintiff and even if interpreted as an accusation of racism, was

5   not the sort of verifiably false comment that may form the basis of a defamation claim.

6          Plaintiff's IIED claim is based on two sets of allegations.  The majority of the facts alleged

7   in the IIED claim, those facts set forth at paragraphs 40 through 45 of Document Number 153-1,

8   allege that Plaintiff's conduct during the city council meeting of May 7, 2008; conduct including

9   the shutting off of Plaintiff's microphone during his comment period and the forceful removal of

10  Plaintiff from the meeting chambers, constituted conduct giving rise to emotional damage.

11  Plaintiff's IIED claim also alleges that Defendant's statement that Plaintiff was a "dangerous

12  member of the Ku Klux Klan was a contributory factor as well as the "lynching with words"

13  comment.  Finally, Plaintiff alleges that Defendant's reference to Plaintiff as "a person of no value

14  that would beat up [Defendant's] wife and children and who could have threatened citizens to sign

15  the recall petition against [Defendant]" contribute to Plaintiffs emotional harm.  The court granted

16  Defendant's motion for summary judgment as to Plaintiff's IIED claim because Plaintiff failed to

17  comply with California's Tort Claims Act by failing to file an administrative claim for IIED prior

18  to filing his SAC.

19          ***B. Legal Structure of a Citizen's Claim for Violation of First Amendment Rights***

20          Court's in this circuit generally rely on the Model Jury Instructions provided by the Ninth

21  Circuit Court of Appeals.  Plaintiff included in his proposed jury instructions the Ninth Circuit

22  instruction that is recommended for use where the plaintiff is a citizen (a different instruction is

23  recommended where the plaintiff is a public employee).  There are two Model Jury Instructions

24  that, taken together, establish all the elements of a claim for violation of a First Amendment right.

25  The first of the instructions, Model Instruction 9.2 sets forth the two general requirements for a

26  claim for violation of a constitutional right pursuant to 42 U.S.C. § 1983.  That instruction

27  provides that, "in order to prevail on his § 1983 claim against s defendant, a plaintiff must prove

28  each of the following elements by a preponderance of the evidence: (1) the defendant acted under

1  color of law; and (2) the acts of the defendant deprived the plaintiff of his particular rights [to free

2  speech] under the constitution." 9th Circuit Model Instruction 9.2.  The second of the two

3  instruction is Ninth Circuit Model Instruction 9.10, which sets forth the additional specific

4  elements of a First Amendment claim as follows:

5      In order to prove a defendant deprived a plaintiff of his First Amendment right, the

6      plaintiff must prove the following additional elements by a preponderance of the evidence.

7          1.   Plaintiff engaged in speech protected under the First Amendment;

8          2.   Defendant took action against Plaintiff; and

9          3.   Plaintiff's protected speech was a substantial or motivating factor for Defendant's

10             action.

11  Id.

12      The concept of retaliation is intended to accommodate the legal fact that a plaintiff need

13  not show that his speech was actually interfered with; he need only show that the defendant's

14  actions caused an injury to the plaintiff because of the plaintiff's speech that would be sufficient to

15  cause "a person of ordinary firmness from continuing to engage in that activity."  Buckheit v.

16  Dennis, 2012 WL 1166077 (N.D. Cal. 2012) at *18.  Stated in the context of a retaliation claim, a

17  plaintiff asserting a First Amendment claim under a theory of retaliation "must show: (1) that the

18  plaintiff was engaged in a constitutionally protected activity; (2) that the defendants actions cause

19  the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to

20  engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a

21  response to the plaintiff's exercise of constitutionally protected conduct."  Id. (citing Worrell v.

22  Henry, 219 F.3d 1197, 1212 (10th Cir. 2000) (internal quotations omitted).

23      However, a plaintiff may not recover merely on the basis of a speculative "chill."  Rather,

24  a plaintiff must allege discrete acts of intimidation directed solely at dissuading the plaintiff's

25  future exercise of his free speech rights.  See Mendocino Env'tl Ctr. V. Mendocino County, 14

26  F.3d 457 464 (9th Cir. 1994) ("discrete acts of police surveillance and intimidation [aimed] solely

27  at silencing" are required to state First Amendment retaliation claim).  What a First Amendment

28  retaliation is definitely not is a mechanism for recovery for every hostile act by a defendant against

1   a plaintiff who is exercising his First Amendment rights.  In short, to show that a particular act is

2   retaliatory a plaintiff must show (1) that the act was taken under color of law, (2) that the act

3   resulted in an injury that was specifically intended to prevent the plaintiff from continuing to

4   exercise his free speech rights.

5   ### C. Application of Legal Standard to Plaintiff's Request for Clerical Clarification

6   Plaintiff's Motion for "clerical clarification" fails for two reasons.  The first reason is that

7   Plaintiff's sole remaining claim pursuant to 42 U.S.C. § 1983 authorizes an action to recover

8   damages only for acts committed under color of law.  An act committed "under color of law" is an

9   act in performance of "official duties under any state, county or municipal ordinance or

10  regulation."  9th Circuit Model Jury Instruction 9.2; see Sloman v. Tadlock, 21 F.3d 1462, 1469

11  (9th Cir. 1994) (use of official powers, such as power to arrest, cite, warn, etc. is an element of

12  First Amendment infringement under section 1983).  Just because a person is an official does not

13  mean that person acts "under color of law" in all actions he or she may take.  There is no evidence

14  that that Defendant was acting under color of law when he allegedly made the "Ku Klux Klan"

15  comment.  Similarly, although Defendant was at the city council meeting of March 19, 2008, in

16  his capacity as an elected official, his comment or comments regarding "lynching with words" do

17  not constitute the performance of an official duty; rather, it is an example of an official speaking

18  on his own behalf in response to public questioning.  Finally, when Defendant made comments

19  during his depositions to the effect that he was of the opinion that Plaintiff is a person of "no

20  value," Defendant was clearly not performing an official duty, he was acting simply as an

21  individual defendant in a lawsuit.  The only act cited by Plaintiff that qualifies as an act taken

22  against Plaintiff under color of law is Defendant's shutting off of Plaintiff's microphone at the city

23  council meeting of May 7, 2008, and, the alleged ordering of Plaintiff to be removed from the

24  chambers.  With regard to both actions, Defendant was (presumably) utilizing powers granted to

25  him by local ordinance to keep time for public commentary and to maintain order and decorum at

26  the meeting.

27  The second reason Plaintiff's Motion to construe his First Amendment claim as arising

28  from retaliation against Plaintiff must fail is that a retaliation claim, as noted above, must allege

1   that the plaintiff suffered significant harm from the defendant such that the a person of ordinary

2   resolve would be chilled from further exercise of his First Amendment rights.  As the court

3   observed in its March 3 Order, Plaintiff has failed to allege that any action by Defendant, other

4   than the actions taken at the May 7 city council meeting, harmed Plaintiff.  As the court observed

5   in its March 3 order, in a defamation action, the law presumes that damage occurs with each

6   *publication* of the defamatory statement.  The court granted summary judgment as to Plaintiff's

7   first count of defamation because the undisputed facts showed that Plaintiff, not Defendant, had

8   published the defamatory statement and therefore had caused whatever injury he suffered to

9   himself.  Plaintiff's remaining allegations of defamation or infliction of emotional distress through

10  such means as "lynching with words" or suggesting that Plaintiff is a racist were also discussed in

11  the Court's March 3 Order and were determined to be non-actionable because they amount to

12  nothing more than name-calling.  As previously noted in the court's March 3 Order, mere name-

13  calling is not compensable under law.

14      *D.  Conclusion*

15      The court finds that the undisputed facts of this case show that the only violation of

16  Plaintiff's rights under the First Amendment occurred, if at all, during the city council meeting of

17  May 7, 2008, and at no other time.  Acts by Defendant that are alleged in Plaintiff's SAC that

18  occurred at times other than at the May 7 city council meeting and were alleged in regard to

19  Plaintiff's claims for defamation or IIED, including allegations that Defendant had said that

20  Plaintiff was a member of the Ku Klux Klan, a racist, a person of no value, etc., may not be cited

21  by Plaintiff as instances of retaliation in violation of his First Amendment rights or as bases for

22  damages inflicted upon Plaintiff by Defendant.  The only damages Plaintiff may claim and present

23  evidence in support of are damages that were the result of Defendant's actions at the May 7 city

24  council meeting.  It is Plaintiff burden to show at trial that the reason Defendant turned off

25  Plaintiff's microphone and had Plaintiff removed from the city council chambers was because of

26  what Plaintiff was saying.

27      The extent to which Plaintiff may provide evidence of past conduct of Defendant to show

28  the intent of Defendant at the May 7 meeting is not currently before the court and the court makes

1  no determination on that issue.  However, the court repeats what was said during the hearing on

2  motions in limine by reminding Plaintiff that the focus of proof of intent is primarily to be based

3  on what Plaintiff was saying when he was cut off, what other attendees said or did during that time

4  period and what Defendant said or did during that time period.  What may have transpired

5  between Plaintiff and Defendant prior to the city council meeting is of lesser relevance and what

6  may have transpired between Plaintiff and Defendant after May 7 is unlikely to be of any

7  relevance at all.

8        The court also surmises from comments made during the hearing on motions in limine that

9  it is Plaintiff's intention to present evidence at trial of Defendant's Ku Klux Klan comment, the

10  "lynched with words" comment and other comments by Defendant that occurred prior to the city

11  council meeting of May 7.  The court has interpreted Plaintiff's remarks to indicate that he intends

12  to show by Defendant's prior statements that Defendant bore animus toward Plaintiff and that

13  Defendant's actions at May 7 city council meetings, being motivated by that animus, entitle

14  Plaintiff to an award of punitive damages.  If it is Plaintiff's intention to present evidence of prior

15  statements by Defendant because Plaintiff is of the understanding that Defendant's dislike of, or

16  animus toward, Plaintiff is an element of, or probative of, Plaintiff's entitlement to punitive

17  damages, then some words of clarification on the subject of punitive damages is necessary.

18        The Ninth Circuit Model Jury Instruction 5.5, which provides the instruction for punitive

19  damages and which was submitted by both parties, provides that punitive damages may only be

20  awarded if the jury finds "that Defendant's *conduct* that harmed Plaintiff was malicious,

21  oppressive or in reckless disregard of Plaintiff's rights."  Id. (italics added).  The focus of punitive

22  damages award is primarily on the *conduct* of the defendant.  Every infraction of a citizen's rights

23  under the First Amendment necessarily involves conduct by a defendant that is intended to

24  interfere with the plaintiff's exercise of free speech.  A plaintiff is only entitled to punitive

25  damages if the *conduct* of the defendant *evinces* an evil intent.  A defendant who has nothing but

26  loathing and hatred in his heart for a plaintiff but who uses only the least intrusive conduct

27  necessary to accomplish the interference with the plaintiff's free speech is not liable for punitive

28  damages.  In that sense, a person's subject feelings toward another are irrelevant unless those

1  subjective feelings are the explanation for the severity, harshness or oppressiveness of the

2  defendant's conduct.

3       As explained above, it is not the court's purpose at this point to rule on the admissibility of

4  any particular evidence that is to be offered for the purpose of proving Defendant's liability for his

5  acts on the occasion of the May 7 City council meeting.  It is however, the court's intention to

6  remind all parties that Defendant's liability in this action, if any, will arise solely from the acts

7  committed by Defendant on that occasion an no other.  It will be Plaintiff's burden to show how

8  Defendant's personal remarks on some prior occasion are so probative of the severity,

9  maliciousness or oppressiveness of Defendants actions on May 7 that they should be admitted

10  notwithstanding their tendency to cause prejudice or confusion.

11  **II.  Plaintiff's Request for Clarification as to Other Motions in Limine**

12       The portion of Plaintiff's Motion that is included under the heading of "Request for

13  Clarification of # 150 Minutes (Text Only) Motion hearing held on 5/ 20/2014, . . . ." appears to

14  be concerned with the fact that no written order on the motions in limine was forthcoming from

15  the court following the hearing.  The court does not normally issue written orders on motions in

16  limine.  There are two reasons for this.  First, the rulings on motions on limine are generally (as

17  they were in this case) conditional based on the court's understanding of the context in which the

18  parties move to include or exclude specific matters of evidence.  The second reason is that much

19  of the value of the court's rulings on motions in limine comes not from the ruling itself but from a

20  discussion and common understanding of how the introduction of evidence may be allowed or

21  restricted depending on the context at trial and the purpose for which the evidence is offered.  It is

22  the court's opinion that a good deal of ambiguity was generated at the hearing on motions in

23  limine because there was not common understanding of the scope of Plaintiff's First Amendment

24  claim and because the issue of retaliation under the First Amendment had not been a topic the

25  court had previously addressed in this case.

26       It is the court's expectation that a good deal of the ambiguity in its orders will be resolved

27  by the court's order, set forth above, on Plaintiff's Motion.  To the extent confusion or uncertainty

28  remains, it will be dealt with prior to trial.

8

1    The court also notes that Plaintiff has again requested the voluntary recusal of Judge Ishii.

2    That request is again denied.

3

4    IT IS SO ORDERED.

5    Dated:   May 30, 2014                        _____
                                                          SENIOR  DISTRICT  JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28