# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **EUGENE E. FORTE,** | **CASE NO. 1:11-CV- 0718  AWI BAM** |
| **Plaintiff** | **ORDER ON PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES AND COSTS** |
| **v.** | |
| **TOMMY JONES,** | **Doc. #'s 189, 190 & 200** |
| **Defendant.** | |

On June 12, 2014, judgment was entered in this case in favor of plaintiff Eugene Forte ("Plaintiff") following jury trial and verdict finding violation of Plaintiff's rights under the First Amendment in violation of 42 U.S.C. § 1983 by defendant Tommy Jones ("Defendant").  On July 9, 2014, Plaintiff filed a Bill of Costs and a Motion for Attorney Fees and Costs (hereinafter, Plaintiff's "Motion"), Docket Numbers 189 and 190, respectively.  Defendant filed objections to Plaintiff's bill of costs on July 15, 2014, and filed an opposition to Plaintiff's Motion on July 28, 2014.  Plaintiff filed his reply on August 4, 2014, and an amended reply on August 5, 2014. Plaintiff filed a document titled "Request for Order on Motion for Costs & Request for Investigation . . ." on November 8, 2010.  Doc. # 200.

## I.  Attorney's Fees

Plaintiff's Motion requests an award of attorney fees under two distinct theories.  First, Plaintiff seeks fees he paid to an attorney, Mr. Charles Belkin ("Belkin"), to assist him for the limited purpose of preparing an opposition to a motion by Defendant to have Plaintiff declared a vexatious litigant and a to prepare moving papers for sanctions by Plaintiff against Defendant for

1   filing a frivolous motion.  Second, it is the court's understanding that Plaintiff may be seeking an

2   award of attorney fees on behalf of himself for his own effort in maintaining this action against

3   Defendant.  The court will consider each in turn.

4         ***A. Attorney Fees for Services Rendered by Belkin***

5        Because the claim under which Plaintiff prevailed in this court was a claim for violation of

6   civil rights pursuant to 42 U.S.C. § 1983, the availability of attorney's fees is governed by 42

7   U.S.C. § 1988(b), which provides, in pertinent part:

8       In any *action or proceeding to enforce a provision* of sections 1981, 1981a, 1982,
           1983, 1985 and 1986 of this title, [. . .] the court, in its discretion, may allow the
9       prevailing party, other than the United States, a reasonable attorney's fee as part of
           the costs . . . .
10

11   <u>Id.</u>  (italics added).

12        Belkin's service to Plaintiff was rendered while the case was in the Superior Court of

13   Stanislaus (or possibly Merced) County, and the operative complaint was Plaintiff's First

14   Amended Complaint, which lacked any federal claim.  It appears from the "Declaration of Charles

15   Belkin," which is attachment "2" to Plaintiffs Motion, Doc. # 190-2, that Belkin substituted in as

16   Plaintiff's attorney on or about February 1, 2010, and that his services were concluded prior to the

17   end of that year.  The Belkin Declaration indicates that the work performed by Belkin was limited

18   to the preparation of Plaintiffs' opposition to Defendant's motion to declare Plaintiff a vexatious

19   litigant (the "VLM") and preparation of Plaintiff's counter-motion for monetary sanctions.

20   Plaintiff contends that Belkin's service was a necessary part of the advancement of Plaintiff's

21   claims under section 1983 because, as the court understands Plaintiff's reasoning, the VLM

22   represented a substantial bar to Plaintiff's action, which would later be amended in May of 2011 to

23   include Plaintiff's claim pursuant to section 1983.  Plaintiff does not allege Belkin had any role in

24   the filing of Plaintiff's Second Amended Complaint ("SAC"), which set forth Plaintiff's federal

25   claim for the first time and was the complaint that was removed to this court.

26        The court finds there was no connection between Belkin's services to Plaintiff and the

27   *enforcement* of Plaintiff's later claim pursuant to section 1983.  From this court's perspective

28   Belkin did nothing to advance the claim upon which Plaintiff ultimately prevailed because the

1    course of events in this court would have proceeded as they did whether Defendant removed the

2    action when Plaintiff amended the complaint to add a federal claim (which he did), or whether

3    Plaintiff voluntarily dismissed the claim in Superior Court in light of the pending VLM and filed a

4    new action in this court asserting the section 1983 claim (which he could have done).  Either way,

5    Plaintiff's only successful claim would have been before this court and any issue regarding

6    Plaintiff's status as a vexatious litigant in Superior Court is, or would have been, moot.

7         The court concludes Plaintiff is not entitled under 42 U.S.C. § 1988 to an award of

8    attorney's fees for the billed services of attorney Belkin.

9                    **B.  Attorney's Fees for Plaintiff**

10        Plaintiff's Motion is ambiguous as to whether Plaintiff is actually requesting attorney's

11   fees for his own efforts and his own results or whether Plaintiff's Motion is confined to

12   compensation for Belkin's fees.  Plaintiff's Motion for attorney's fees focuses significant attention

13   on *Plaintiff's* efforts in prevailing in this action and asserts that attorney's fees should be awarded

14   at least in part in consideration of the "exceptional result" obtained and in view of the complexity

15   of the case and the vigorous defense that had to be overcome.  Notwithstanding Plaintiff's

16   characterization of the complexity of the case or the exceptional results obtained,, it is well

17   established that a *pro se* litigant who prevails in a 1983 claim is not entitled to an award of

18   attorney fees pursuant to 42 U.S.C. § 1988.  Plaintiff's reply memorandum states plainly that

19   Plaintiff is not requesting attorney's fees for his own efforts.  The court will take Plaintiff's word

20   for it.  Because the court has found that Belkin's services as attorney for Plaintiff had nothing to

21   do with the enforcement of Plaintiff's rights under section 1983, it remains the court's

22   determination that Plaintiff is not entitled to an award of attorney's fees.

23   **II.  Costs**

24        As an initial matter, the court notes that Plaintiff's argument with respect to costs appears

25   somewhat confused.  Plaintiff's motions for costs appears to be for what he terms "attorney's

26   costs" pursuant to 42 U.S.C. § 1988.  What may be awarded as costs is, to some extent,

27   determined by 42 U.S.C. § 1988, and is more completely described by Local Rule 54-292.  Local

28   rules and federal statute do not refer to "attorney's costs" so the court will assume that Plaintiff's

1  motion for award of costs refers to costs as specified by Local Rule 54-292 and as further

2  specified by 42 U.S.C. § 1988.  Defendant opposes Plaintiff's Motion for costs primarily on the

3  ground the Motion was not timely filed and secondarily on the ground that certain of the costs

4  alleged are incompletely document or are not compensable.  Because the court will find that

5  Plaintiff's Motion must be denied because it was not timely filed, the court will not address

6  Defendant's objections with regard to insufficient documentation or whether the costs are

7  allowable.

8          The actual award of court costs to a prevailing party is made pursuant to Rule 54(d) of the

9  Federal Rules of Civil Procedure.  Since Rule 54(d) does not specify a time limit for the filing of a

10 bill of costs, the matter of timeliness is determined by operation of local rules.  In this district, an

11 award of court costs to a prevailing party is governed by Local Rule 54-292.  Pursuant to Local

12 Rule 54-292(b), a bill of costs is to be filed not later than ten days from the date of entry of

13 judgment.  In this case, judgment was entered in favor of Plaintiff on June 12, 2014, and the event

14 was docketed on the following day.  Doc. # 183.  Pursuant to Local Rule 54-292(b), Plaintiff's bill

15 of costs was due no later than June 23, 2014.  Plaintiff's bill of costs was filed on July 9, 2014,

16 approximately two weeks late.

17         The failure of a party or a party's attorney to timely file a document may be excused under

18 Federal Rule of Civil Procedure 6(b) if the failure to timely file is a result of excusable neglect.

19 "To determine whether neglect is excusable, a court must consider four factors: '(1) the danger of

20 prejudice to the opposing party; (2) the length of the delay and its potential impact on the

21 proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith.'

22 [Citations]."  In re Veritas Software Corp. Securities Litigation, 496 F.3d 962, 974 (9th  Cir. 2007)

23 (quoting Bateman v. U.S. Postal Serv., 231 F.3d 1220, 1223–24 (9th Cir.2000)).  There is no

24 question that the delay of two weeks in Plaintiff's filing of a bill of costs has no substantial effect

25 on the proceeding.  Likewise, there does not appear to be any prejudice to Defendant arising from

26 the delay.  What is problematic, from the court's perspective is the remaining two factors; the

27 reason for delay and the movant's good faith.

28         The court has examined the documents that have been filed by Plaintiff in this action since

4

1    the docketing of the entry of judgment on June 13, 2014, and cannot find in any of these

2    documents a reason for the failure to timely file a bill of costs.  The court has some recollection of

3    an email – now deleted – that explained the delay by stating that Plaintiff's time and attention had

4    been consumed by matters arising in one or the other of Plaintiff's two other cases pending in this

5    court or by demands on his time and attention resulting from his appeal of the dismissal of

6    criminal charges in Merced Superior Court. To the extent Plaintiff did offer the explanation noted

7    above, the court has previously warned Plaintiff that his decision to engage in multiple

8    simultaneous lawsuits is a matter of choice and the demands on his time and attention in one

9    action do not constitute an excuse for deadlines missed in another action.  Relief from the failure

10   to meet a court deadline under Rule 6(b) generally is considered by the court in the form of a

11   motion for extension of time by the party seeking to be relieved that states the reason for the delay

12   and the amount of time needed.  Here, there was no motion for extension of time or motion for

13   relief from the deadline.  The non-explanation of the reason or reasons for the missed deadline and

14   the failure to file an explanation and motion for relief weigh heavily against the granting of

15   Plaintiff's Motion.  See, e.g., Schultz v. Ichimoto, 2010 WL 4643648 (E.D. Cal. 2010) at *3

16   (failure to timely file results in denial of motion for costs where there is no *affirmative* showing of

17   excusable neglect).

18          Also of concern to the court is the fourth factor – the consideration of the good faith

19   displayed by Plaintiff during the course of the proceedings.  Bad faith is present when an attorney

20   "knowingly or recklessly" raises a frivolous argument, or argues a meritorious claim for the

21   purpose of harassing an opponent.  In Re Keegan Mgmt. Co., Sec. Litig., 78 F.3d 431, 436 (9th

22   Cir.1996); Estate of Blas v. Winkler, 729 F.2d 858, 860 (9th Cir.1986).  The court realizes that the

23   evidence necessary to support a finding of bad faith varies according to the purpose of the inquiry.

24   For example, where the issue is the monetary sanctioning of attorney behavior pursuant to 28

25   U.S.C. § 1927, a court must find the offending attorney "so multipl[ied] the proceedings [. . .]

26   unreasonably and vexatiously" as to require that the attorney pay the opposing attorney the fees

27   and costs "reasonably incurred because of such conduct."  Id.  The issue before the court is not one

28   of sanctions against Plaintiff but rather involves the lesser purpose of determining whether

1    Plaintiff's conduct evinced good faith such that the factor should weigh in his favor in a motion

2    for relief from a deadline.  The court finds the standard applicable here for a finding of the lack of

3    good faith is something less than the standard for a finding of sanctionable bad faith.

4        Plaintiff correctly states that he has not been sanctioned in this action by the court.  The

5    fact that Plaintiff has not been sanctioned is, however, not to say that Plaintiff's conduct has been

6    consistent with the court's notion of good faith.  It is important to note that the court's concern

7    with the issue of good faith is primarily with the extent to which Plaintiff's conduct has been

8    consistent with a purpose of proceeding toward a fair and timely resolution of the action and has

9    avoided the unnecessary expenditure of time and resources by both the court and the opposing

10   party.  Thus, the court's inquiry into the factor of good faith conduct focuses on the extent to

11   which the filings of the party moving for relief from time limits – here plaintiff—failed to serve

12   the goals of fair and expeditious resolution of the action.  From a practical standpoint, what the

13   court looks at is whether there is a substantial incidence of filings by Plaintiff that were legally

14   unnecessary, needlessly consumptive of the court's time and resources, needlessly consumptive of

15   the opposing party's time and resources and for which the court should fairly allocate the burden

16   of cost and fees arising from those filings *against* Plaintiff.

17       Plaintiff characterizes the proceedings and legal issues in this case as complex.  The court

18   disagrees.  From a legal perspective, once the court ruled on Defendant's motion for summary

19   judgment, the case became, from a legal perspective, a very simple question of whether Defendant

20   acted with the specific intent to deny Plaintiff rights under the First Amendment.  The only

21   unusual obstacle present in this case arose as a result of Defendant's announcement of his

22   intention to bring up the issue of Plaintiff's competence to represent himself at trial; an issue that

23   played a prominent role in criminal proceedings against Plaintiff.  The issue was one the court

24   could not legally ignore and which required a fairly simple pretrial conference to resolve.

25       The court began the process of dealing with Defendant's stated intention to raise the issue

26   of Plaintiff's competence to act as his own attorney on March 27, 2014, by issuing an order

27   vacating the trial date and explaining the need to resolve the issue prior to any further proceedings

28   and the need for additional information by the parties.  Plaintiff thereafter requested blank

1    subpoena form to be issued signed by Judge Ishii. Doc. # 54.  The court issued an order denying

2    the request for blank subpoenas and explained the reason for that decision.  Doc. # 55.  On April

3    16, 2013, Plaintiff filed a "Status Report" and accompanying declaration, Documents #'s 56 and

4    57 respectively.  The "status report" basically argued with and complained about the court's

5    management of the competency issue raised by Defendants, the refusal of the court to issue blank

6    subpoenas and the conduct of Defendant's attorneys.  On May 23, 2013, Plaintiff moved for court

7    appointment of a "counsel ad litem" and requested action on Plaintiff's "Status Report" of April

8    16, which had requested that Judge Ishii recuse himself.  Doc. # 66.  Plaintiff followed the request

9    for assignment of counsel ad litem with a separate motion for appointment of counsel on May 24,

10   2013, and a request for the court to have its Deputy Clerk "explain in detail the alleged abusive

11   conduct" by Plaintiff.  Doc. # 68.

12          Documents filed by Plaintiff at Docket Numbers 56, 57, 66, 67 and 68 do not appear to

13   have occasioned any expenditure of resources by Defendant.  However, the court finds these

14   documents were legally unmeritorious, were mainly argumentative and served no discernable

15   purpose in moving towards resolution of the case.  They also consumed a good deal of the court's

16   time and resources.  If the issue were compensation of Plaintiff for legal costs incurred, the court

17   could not order compensation for any costs associated with the filing of Documents 56, 57, 66, 67

18   and 68.  Regardless of whether, Plaintiff's filings at Docket Numbers 56, 57, 66, 67 and 68 could

19   be construed as examples of bad faith, they certainly do not exemplify good faith conduct.  As a

20   practical matter, the court cannot consider the filing of documents that merely express Plaintiff's

21   frustrations with the court's management of the competency issue and/or Plaintiff's dissatisfaction

22   with the conduct of the opposing attorney as evidence of good faith.

23          The court filed a minute order on May 30, 2013, explaining that the request for

24   appointment of counsel would be held in abeyance pending the hearing on the competency issue.

25   Plaintiff thereafter attempted to appeal various aspects of the court's handling of the case up to

26   that point to the Ninth Circuit.  The appeal was denied for lack of jurisdiction on June 19, 2013.

27   The court feels it cannot hold Plaintiff's untimely filing of the appeal to be an example of bad faith

28   conduct because it may be presumed that he did not know that an appeal cannot be filed until a

7

1   case has been finally decided.  However, as above, were the issue compensation for Plaintiff's

2   legal costs, the court could not award any compensation for costs arising as a result of the

3   untimely appeal because the appeal was meritless and failed to do anything to advance the

4   resolution of the action.

5          On June 13, 2013, Plaintiff filed what was purported to be a motion to proceed in forma

6   pauperis (presumably with regard to the appeal, since filing fees had already been paid in the

7   district court).  Doc. # 77.  The motion was mooted a week later by the appellate court's denial of

8   the appeal for lack of jurisdiction on June 19, 2013.  Regardless of the appropriateness of the

9   motion to proceed IFP, the court finds that Plaintiff's filing of the motion to proceed IFP evinces

10  bad faith conduct because the substance of the motion dealt less with the need to proceed IFP and

11  dealt more extensively with Plaintiff's criticisms of the conduct of the parties, opposing

12  attorney(s) and the court with regard to proceedings in the instant case and in the case of <u>Forte v.</u>

13  <u>County of Merced</u>, 13cv0318.  <u>See</u>, Doc. # 77 at 3:5-10 ("Ishii is involved in aiding and abetting

14  both intrinsic and extrinsic fraud with the defendants in the cases of Forte v. Merced County, et al,

15  1:11-cv-00318, and Forte v. Jones, et al, 1:11-cv-00718 by knowingly permitting the defendants'

16  counsels to commit perjury in their declarations on material issues of fact, and refusing to address

17  the attorneys' conduct and moral turpitude which prejudice plaintiff and enables and promotes a

18  fraud upon the court to be orchestrated at will by the defendants and their counsels)."  The filing

19  of this pleading did occasion response by Defendant's attorney.  While the request to proceed IFP

20  is perhaps excusable even if legally moot, the criticisms of the opposing parties and attorneys and

21  the court were without any apparent legal purpose, consumed the court's time and resources and

22  were unnecessarily prejudicial to the opposing party.  Were the issue compensation for Plaintiff's

23  costs in filing the request to proceed IFP, the court would not only deny any compensation for

24  costs associated with the filing, the court would tax the costs and attorney fees occasioned by

25  Defendant against Plaintiff.  Plaintiff's filings set forth in Doc. # 77 weigh significantly against a

26  finding of good faith conduct by Plaintiff.

27         On June 26, 2013, the court issued two orders in response to Plaintiff's prior motions.  The

28  first order, Doc. # 89, denied Plaintiffs motion to file an interlocutory appeal and denied Plaintiff's

8

1   motion to proceed *in forma pauperis* as moot.  In that order the court explained in some detail its

2   reasoning behind its management of the question of Plaintiff's competence to act as his own

3   attorney in this proceeding.  On the same date the court filed a memorandum opinion and order

4   denying Plaintiff's motions to appoint a guardian ad litem and to appoint an attorney or attorney

5   ad litem.  This order also explained at some length the factors it considers relevant in determining

6   Plaintiff's competence to proceed as his own attorney and the basis of its decision to hold all

7   motions for appointment of guardians or attorneys ad litem in abeyance.  On July 3, 2013, the

8   court filed an order denying Plaintiff's motion for issuance of Subpoenas Duces Tecum and again

9   explaining the information the court feels is relevant to the determination of Plaintiff's

10  competence to represent himself and why the issue had to be addressed in the manner determined

11  by the court.

12      On July 11, 2013, Plaintiff filed a "Motion for More Definite Statement and Correction of

13  Order Denying Plaintiff's Motion for Issuance of Subpoenas Duces Tecum."  Doc. # 92.  That

14  motion was simply further argument with the court's order of July 3 and occasioned the filing of

15  an opposition by Defendant.  On the same date, Plaintiff filed a motion for more definite statement

16  and clarification of the prior court orders denying appointment of guardian and attorney ad litem,

17  denying issuance of subpoenas duces tecum and providing information regarding the hearing on

18  Plaintiff's competency.  Doc. # 94.  Again, this motion was simply a re-argument of the court's

19  prior determinations of Plaintiff's motions.  Again, Plaintiff's filings occasioned the filing of an

20  opposition by Defendant.  Whether or not Plaintiff subjectively feels that the "motions for a more

21  definite statement and clarification" of previous orders were filed in good faith, the fact remains

22  that they amounted simply to continued argument over the court's prior order and are legally

23  meritless.  Again, if the issue were Plaintiffs costs, the court would disallow any award of

24  Plaintiff's costs with regard to these motions and would offset any costs awarded to the extent

25  Defendant incurred any attorney fees or costs in preparation of responses to Plaintiff's motions.

26  The court again finds that Plaintiff's filing of motions set forth in Documents 92 and 94 are

27  evidence weighing against a finding of good faith.

28      The hearing on Plaintiff's competence to function as his own attorney and on Defendant's

anticipated motion in limine to raise the issue of Plaintiff's competence was held on September 9, 2013, following postponement as requested by Plaintiff.  The court found Plaintiff competent to represent himself and referred the matter to the Magistrate Judge for further scheduling orders.  On September 8, 2013, Plaintiff filed a document titled "Motion for a More Definite Statement and Clarification of Competency Hearing September 3rd, 2013 [. . .] [and] Request for Judge Ishii to Request Grand Jury Investigation of Merced County Government Abuse of Psychology" and accompanying declaration. Doc. # 106.  Plaintiff's September 8 Motion consists primarily of argument by Plaintiff that the court should have inquired about and ruled on the legitimacy of the Merced County Superior Court's determination that Plaintiff was not competent to stand trial in a criminal matter or matters before that court.  The Motion was also reiterated Plaintiff's allegations of "fraud on the court" by defendant parties in the proceedings before the Merced County Superior Court and requested that this court intervene in the proceedings in the Superior Court despite frequent statements by this court that such intervention by this court would be improper. Plaintiff's September 8 Motion did occasion Defendant's opposition which was filed on September 23, 2013.

While this court understands that Plaintiff feels that proceedings in the Merced County Superior court in his criminal cases were profoundly flawed and unlawful, this court has repeatedly informed Plaintiff in this case and in other cases before this court that, absent a constitutional violation which Plaintiff has been consistently unable to demonstrate, this court may not mediate, regulate or interfere in state court proceedings no matter how unfair, rigged or flawed Plaintiff may believe them to be.  Plaintiff's repetitive efforts to interject issues such as "misuse of psychology" and "fraud on the court" into these proceedings has been uniformly unproductive to the progress of proceeding, has been prejudicial and costly to opposing parties and has resulted in needless expenditure of the court's limited resources.  Again, while the issue before the court is not the imposition of sanctions for Plaintiff's conduct, the court finds that Plaintiff's repetitive attempts to argue these issues is evidence that weighs substantially against a finding of good faith conduct.

The foregoing is a non-exhaustive list of filings by Plaintiff in this case that needlessly

1    prolonged the proceedings, unnecessarily consumed court time and resources and unnecessarily

2    occasioned responses by Defendant for which Defendant incurred increased fees and costs.  The

3    filings also evince a pattern of repetitive arguments, sequential re-assertions of previously rejected

4    motions and requests.  As noted above, the issue before the court is not whether Plaintiff's conduct

5    evinces bad faith within the meaning of 28 U.S.C. § 1927 or any other statute that would create

6    liability for bad faith conduct.  The issue before the court is merely whether Plaintiff's conduct

7    evinces good faith such that Plaintiff should be granted relief from the time limitations imposed by

8    local rule for the filing of a bill of costs.  The court finds it does not.  Based on the court's

9    assessment of Plaintiff's conduct during this action, the court does not feel that Plaintiff has shown

10   sufficient cause under Rule 6(b) to be excused from the time limits imposed by Local Rule 54-

11   292(b) for the filing of a bill of costs.

12

13        Because Plaintiff's bill of costs was not timely filed, Plaintiff's motion for award of costs

14   is hereby DENIED.  Also, for the reasons set forth above, Plaintiff's request for Attorney Fees is

15   DENIED.

16

17   IT IS SO ORDERED.

18   Dated:   December 12, 2014        _____

19                                         SENIOR  DISTRICT  JUDGE

20

21

22

23

24

25

26

27

28